## COMMONWEALTH *vs.* JEFFREY ROTH.

Suffolk. March 4, 2002. - October 11, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Verdict, Deliberation of jury, Lesser included offense, Jury
and jurors, Double jeopardy. *Constitutional Law,* Double jeopardy. *Jury
and Jurors. Rules of Criminal Procedure.*

This court concluded that a judge in a criminal case erred in initiating an
inquiry into the possibility of a deadlocked jury's returning partial verdicts
premised on lesser included offenses within single counts of an indictment
[786-795], but that principles of double jeopardy precluded retrial of the
defendant on those offenses as to which the jury had rendered verdicts of
not guilty [795-796].

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on February 2, 2001.

The case was reported by *Greaney*, J.

*Gregory I. Massing*, Assistant District Attorney (*Nicole M.
Procida*, Assistant District Attorney, with him) for the
Commonwealth.

*Hugh W. Samson* for the defendant.

SOSMAN, J. The Commonwealth has petitioned pursuant to
G. L. c. 211, § 3, asking this court to set aside "partial verdicts"
taken after a deliberating jury twice reported that they were
deadlocked. A single justice of this court reserved and reported
the case to the full bench. While we agree with the Com-
monwealth that the judge erred in taking "partial verdicts" on
lesser included offenses within a single indictment, principles of
double jeopardy preclude retrial of the defendant on the of-
fenses as to which the jury rendered verdicts of not guilty.
Although the judge should not have asked for or taken them,
those verdicts will stand. The Commonwealth may retry the
defendant only on the remaining lesser included offenses on
which the jury were unable to reach a verdict.

1. *Facts and procedural history.* The defendant was charged in two indictments, one for vehicular homicide (G. L. c. 90, § 24G [*a*]) and the other for operating while under the influence of liquor causing serious bodily injury (G. L. c. 90, § 24L [1]), stemming from a two-car collision on Interstate Route 95. The defendant's vehicle, a Dodge Durango, struck the victims' vehicle, a Ford Bronco. Both victims were ejected from the Bronco. One victim died; the other sustained serious injuries. At trial, the jury heard conflicting testimony and sharply divergent expert opinions as to how the accident occurred. The Commonwealth contended that the defendant, traveling in excess of eighty miles an hour, wove between lanes and struck the Bronco. The defendant contended that he had been traveling in one lane and under the speed limit, that the Bronco had angled across his lane, and that he had swerved his vehicle in an unsuccessful attempt to avoid the collision. There was also conflicting testimony from various witnesses at the scene, and later at the hospital, expressing sharply divergent views as to whether the defendant was intoxicated.

Trial commenced on November 14, 2000. The judge gave his final instructions on November 27, including instructions on a lesser included offense for each indictment.[1] After two days of deliberation, a note from the foreperson reported that the jury were deadlocked. Deliberations were suspended, and the jury were told to report back the following morning. After consulting with counsel, the judge concluded that his instructions on the lesser included offenses had been erroneous, and that the evidence permitted the jury to consider additional lesser included offenses.[2] Thus, when the jury returned on the morning of November 29, the judge delivered new, complete instructions

---

[1]As originally submitted to the jury, the indictment and verdict slip for motor vehicle homicide contained the lesser included offense of motor vehicle homicide caused by operating recklessly or negligently so as to endanger. G. L. c. 90, § 24G (*b*). The indictment and verdict slip for operating while under the influence of liquor causing serious bodily injury contained a lesser included offense of driving recklessly or negligently to endanger causing serious bodily injury. There is, however, no such lesser offense identified in the statute. G. L. c. 90, § 24L (2). See note 2, *infra.*

[2]The offense as charged in the first indictment, motor vehicle homicide, G. L. c. 90, § 24G (*a*), requires proof that the defendant was both under the influence of liquor *and* operating recklessly or negligently so as to endanger,

including those additional lesser included offenses and gave the
jury revised verdict slips reflecting that wider array of offenses.[3]
As to the indictment charging motor vehicle homicide, the jury
were given the following lesser included offenses for their
consideration: (1) motor vehicle homicide operating recklessly
or negligently so as to endanger (but not while under the influ-
ence of liquor); (2) motor vehicle homicide operating under the
influence of liquor (but not operating recklessly or negligently);
(3) operating under the influence of liquor; and (4) operating
recklessly or negligently. As to the indictment charging operat-
ing while under the influence of liquor causing serious bodily
injury, the list of lesser included offenses consisted of the fol-
lowing: (1) operating while under the influence of liquor (but
not operating recklessly or negligently) causing serious bodily
injury; (2) operating while under the influence of liquor; and (3)
operating recklessly or negligently. See note 2, *supra*. The
revised verdict slips provided separate boxes for "Guilty" cor-
responding to the offense as charged and each of the lesser
included offenses, with a single box designated "Not Guilty" to
be checked if the jury found the defendant not guilty of any
offense.

At the end of that day of further deliberation, the jury again

---

and that such operation caused the victim's death. The statute goes on to
identify two misdemeanor crimes of motor vehicle homicide, one predicated
on driving while under the influence of liquor or drugs, the other on driving
recklessly or negligently so as to endanger, and thereby causing the death of
another. G. L. c. 90, § 24G (*b*). The judge's original instruction had allowed
the jury to consider only a single lesser included offense, that of motor vehicle
homicide while operating recklessly or negligently, while the evidence was
sufficient to make out either form of misdemeanor motor vehicle homicide.

Similarly, the offense as charged in the second indictment, operation of a
motor vehicle while under the influence of liquor causing serious bodily
injury, G. L. c. 90, § 24L (1), requires proof that the defendant was both
under the influence of liquor *and* operating recklessly or negligently so as to
endanger, and that such operation caused serious injury to the victim. That
statute, however, provides for only one form of misdemeanor, the crime of
operating while under the influence of liquor causing serious bodily injury.
G. L. c. 90, § 24L (2). There is no corresponding misdemeanor in § 24L (2)
for operating recklessly or negligently so as to endanger causing serious
bodily injury, and the judge's submission of such a lesser included offense in
the original instructions and verdict slip was error.

[3]The judge also allowed both sides to give a further closing argument, in
light of the expanded list of lesser included offenses.

reported that they were deadlocked. The next morning, November 30, the judge gave the jury the so-called *Tuey-Rodriquez* instruction, see *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix A), and they resumed deliberations.[4] After several hours of further deliberation, the foreperson sent the judge the following note: "We have tried our hardest and cannot come to a unanimous decision. After viewing and reviewing all evidence and testimony, we cannot agree." The judge then consulted with counsel concerning the declaration of a mistrial. Defense counsel requested that the judge inquire as to whether the jury had reached any "partial verdicts." The Commonwealth requested that the judge simply declare a mistrial. The judge decided that he would inquire of the jury as to any "partial verdicts."

The inquiry as to "partial verdicts" began with the judge's explaining to the jury that he did not want to inquire into, or be told anything about, "what it is that you have discussed or the nature of your deliberations." Next, he explained that, if the foreperson did not understand any of his questions, she should simply respond that she did not understand. The judge then inquired as to whether the jury had reached a unanimous verdict with respect to the motor vehicle homicide offense as charged. After an extended explanation by the judge as to what was meant by that inquiry, interspersed with repeated questions and expressions of confusion by the foreperson, the foreperson responded that the jury had reached a unanimous verdict on that offense.[5] The judge then proceeded to make a similar inquiry

---

[4]The judge determined that G. L. c. 234, § 34, had not been triggered, and therefore did not ask the jurors whether they consented to resume deliberations. That determination has not been challenged here.

[5]The inquiry proceeded as follows:

THE JUDGE: "So the question is, as to any of the charge[s] that you and the jury have considered, have you been able to reach a unanimous verdict of guilty or not guilty?"

THE FOREPERSON: "On?"

THE JUDGE: "On any of the charges you have considered in this case, have you been able to reach a unanimous verdict? That is, have all twelve of you been able to agree as to guilty or not guilty?"

THE FOREPERSON: "On any of the —"

with respect to the offense as charged in the second indict-ment, asking the foreperson whether the jury had agreed on a verdict as to that charge. The foreperson replied that they had

THE JUDGE: "On any of the charges?"

THE FOREPERSON: "Yes, we have, Your Honor."

THE JUDGE: "All right. Then I'm going to ask you further, and I'm going to take the first indictment, and this is the indictment that charges motor vehicle homicide. And I'm going to ask you, with regard to the offense as charged, and this is the second entry on the slip, motor vehicle homicide: as to that charge, were you able to agree, all twelve of you, as to a verdict of guilty or not guilty? Not what it was, but simply whether all twelve of you were able to agree to a verdict of guilty or not guilty?"

THE FOREPERSON: "Yes, Your Honor."

THE JUDGE: "All right. Then I'm going to go over to the second indictment. The first indictment, by the way —"

THE FOREPERSON: "Your Honor, I think I need to go back."

THE JUDGE: "All right, then let me put the question again."

THE FOREPERSON: "Yes, thank you, Your Honor."

THE JUDGE: "All right, now the first indictment is the indictment that charged motor vehicle homicide, which is the charge relating to the death of [the victim]. And this is the indictment that has a total of six options. The first option is not guilty. The second was, guilty of the offense as charged. And then there were one, two, three, four so-called lesser, included offenses.

"Now, do you have any doubt — because it's important that I understand whether or not you, in turn, understand my question — do you have any doubt, when I refer to the 'offense as charged,' which particular option I'm referring to?"

THE FOREPERSON: "I remember from that paper that we worked on, and my belief is that we have reached —"

THE JUDGE: "And I don't want you to tell me what your decision is —"

THE FOREPERSON: "— no, no, no — a unanimous decision —"

THE JUDGE: "— as to that charge."

THE FOREPERSON: "— as to the second one down."

THE JUDGE: "All right. Now, I just want to be certain that you understand that that is the offense that requires proof beyond a reasonable doubt of five elements?"

THE FOREPERSON: "Yes, sir."

THE JUDGE: "And that's the one you believe you have reached a unanimous decision about, guilty or not guilty?"

THE FOREPERSON: "I'm still not sure I understand, I'm afraid."

THE JUDGE: "All right. The second question is the question that asks you whether or not the Commonwealth has proved beyond a reasonable doubt the offense as charged, and this is motor vehicle homicide."

THE FOREPERSON: "Right."

also reached a verdict as to that charge. The judge then instructed:

> "All right. Now, what I'm going to do, Ladies and Gentlemen, is I'm going to direct you to return to the jury room and to record — if indeed it is your unanimous verdict, if all twelve of you, as to those two charges, are in agreement on a verdict of guilty or not guilty — I'm going to direct you to record that verdict and then to return that paper to the Court and then I will, perhaps, inquire further of you."

At that juncture, the prosecutor asked to be heard at sidebar. She objected to the procedure, arguing that "it seemed very confusing," expressing doubt whether the foreperson had understood the question, and observing that "all of the jurors had looks on their faces, like they didn't know what she was talking about when she said yes." The prosecutor also expressed concern that the process, and the phrasing of the question, improperly pressured the jury to make a decision. The judge disagreed with that assessment, but proceeded to rephrase his question to the jury:

> "Let me just say again, two things: the question that I have asked is whether all twelve of you have reached an agreement with regard to the offense charged in each indictment that's comprised of five elements. And you have the written instructions to consult, if you go back and you want to consult them. If you have reached a unanimous decision that the Commonwealth has proved the guilt of the defendant on each indictment beyond a reasonable doubt or that it has not, that is, that you agree on a verdict of guilty or not guilty, I am directing you to go back and to record that verdict on each of the verdict slips by checking whether or not the verdict on that charge is guilty, if

---

THE JUDGE: "And this is the offense that has the five elements, one of which includes causing the death of [the victim]. And my question to you is, as to that charge, has the jury agreed on a verdict of guilty or not guilty?"

THE FOREPERSON: "Yes."

the Commonwealth has proved all those five elements beyond a reasonable doubt; and if you have unanimously agreed that the Commonwealth has not proved those five elements beyond a reasonable doubt, then you should not check that box. And that's what I'm asking each of you to do.

"So if your verdict is that the Commonwealth has proved those five elements beyond a reasonable doubt and, in accordance with the instructions I've given you, that box should be checked and it should be signed and dated by the foreperson on each indictment.

"If your decision, unanimously, is that the Commonwealth has not proved those five elements beyond a reasonable doubt, then you should come back with that box not checked. And that's all I'm asking you to do.

"If you go back to the jury room and you're not clear on what it is I'm asking you to do, then the procedure is, you write a note with the question and I'll try to answer it."

The jury then returned to the deliberation room.

In the jury's absence, the judge then noted that, "until I gave the jury that last instruction, I'm not sure whether it would have been clear to the jurors what they were supposed to do with that verdict slip in the event that all twelve of them believe that the Commonwealth had not proved, beyond a reasonable doubt, the guilt of the defendant because the potential confusion was, if they checked not guilty, it could be inconsistent with the potential for a unanimous guilty of one of the lesser included offenses." The prosecutor protested that the instruction was still confusing, and that the jurors had looked confused. She pointed out that the format of the verdict slip, which had not been designed to take any such partial verdicts, added to that confusion.[6] The judge explained that if the jury returned with the verdict slip blank, he would interpret that blank as a

---

[6]With only a single box for "Not Guilty," there was no place for the jury to designate a not guilty verdict for only a specified level of offense, and nowhere on the slip for the jurors to indicate that they had not agreed on a verdict as to any particular offense.

unanimous vote of not guilty for the offense as charged, and that he would then inquire of the jury to confirm that that was their vote.

The jury returned,[7] and the judge asked the foreperson whether the jury had reached "a unanimous verdict of guilty or not guilty" as to the two offenses as charged. The foreperson replied that they had. The judge and counsel then inspected the verdict slips, both of which were blank. At sidebar, the judge reiterated his interpretation that that meant a verdict of not guilty on the offenses as charged. The Commonwealth asked that the jury be polled. The clerk then began inquiring of the foreperson, as to the indictment for motor vehicle homicide, "is the defendant guilty or not guilty?" Before the foreperson answered, the judge interrupted and explained:

> "Let me say again, by way of explanation, you are being asked, Ladies and Gentlemen, to indicate individually whether it is your decision as to just that one charge, which includes all five elements as I've explained them to you, whether it is your decision that the defendant is guilty or not guilty. And each of you will be asked that question to insure that, indeed, I correctly understand what the verdict of the jury is."

The clerk proceeded to poll the jury. Each individual juror responded that the defendant was "not guilty" of the offense of motor vehicle homicide as charged. The prosecutor expressly waived polling as to the offense as charged in the second indictment.

The judge then made inquiry of the foreperson as to the lesser included offense of motor vehicle homicide while operating while under the influence of alcohol (but not recklessly or negligently so as to endanger), asking whether the jury had reached a unanimous verdict of guilty or not guilty as to that offense. The foreperson responded that they had. Then, the same inquiry was made with respect to the first lesser included offense on the second indictment, operating while under the influence of liquor (but not recklessly or negligently so as to endanger) causing serious bodily injury, and the foreperson

---

[7]The record does not reflect how long the jury were out.

again responded that the jury had reached a unanimous verdict as to that lesser included offense. The judge instructed the jury to retire, and to mark the box for "Guilty" on the verdict slip if that was their verdict on that lesser included offense, and to leave the slip blank if their verdict was not guilty of that lesser included offense. After the jury retired, the prosecutor again noted her objection "to this process." She reiterated her concern that jurors appeared confused, and pointed out that nothing in the judge's instructions told the jurors that they could report back that they had not reached a verdict either way.

The jury returned; the verdict slips were again inspected and found to be blank; and the jury were again polled on the lesser included offense of motor vehicle homicide while operating under the influence of liquor. Each juror responded, "Not guilty." The Commonwealth again waived polling as to the corresponding lesser included offense on the second indictment.

The judge then made inquiry of the foreperson as to the next lesser included offense of motor vehicle homicide operating recklessly or negligently so as to endanger (but not while under the influence of alcohol), asking whether the jury had reached a unanimous verdict of guilty or not guilty as to that offense. The foreperson replied that the jury had not reached a unanimous verdict as to that lesser included offense. No further inquiry was made, and the jury were discharged.

The judge ordered that the verdicts of not guilty be entered as to the offenses as charged and the first lesser included offense on each indictment, and declared a mistrial as to the remaining lesser included offenses. On December 1, the Commonwealth filed a motion to stay entry of the verdicts.[8] On December 10, the Commonwealth filed a motion to vacate the entry of partial verdicts and to declare a mistrial as to all charges on both indictments. On January 4, 2001, the judge issued his memorandum of decision and order denying the Commonwealth's motion. In that memorandum, the judge explained that, because of "the high level of preparation exhibited by both the prosecu-

---

[8]The Commonwealth has not included that motion in its record appendix. The docket does not reflect any ruling on that motion, but it appears that the verdicts had already been entered on the docket the day before the motion was filed. See Mass. R. Crim. P. 28 (a), 378 Mass. 898 (1979).

tor and defense counsel, the thoroughness with which they had presented the evidence and cross-examined the witnesses, and the careful attention which the jury appeared to have paid to the evidence and the court's instructions, the public interest in the resolution of any charges as to which the jury had found the facts and reached unanimous agreement, [and] the defendant's interest in not facing trial a second time on any charges as to which the jury had agreed on a unanimous verdict of not guilty, [he had] decided that if this jury had reached partial verdicts they should be received and recorded." Although articulating the view that principles of double jeopardy required him to make inquiry as to any partial verdicts, the judge ultimately based his decision on the theory that the taking of partial verdicts on lesser included offenses was authorized by Mass. R. Crim. P. 27 (b), 378 Mass. 897 (1979), and that he had validly exercised his discretion under that rule.

2. *Discussion.* The Commonwealth contends that the judge erred in attempting to take partial verdicts, that the verdicts themselves were not returned and recorded in accordance with the formal requirements for verdicts, and that the partial verdicts should therefore be vacated, allowing the Commonwealth to retry the defendant on the offenses as charged in both indictments, along with all lesser included offenses. We consider first whether the taking of partial verdicts on a single charge, broken down into lesser included offenses, is a permissible practice. For the following reasons, we conclude that it is not.

a. *Rule 27 (b).* The judge's decision was premised on his belief that rule 27 (b) permits the taking of partial verdicts on lesser included offenses. We begin first with Mass. R. Crim. P. 27 (a), 378 Mass. 897 (1979), which provides the fundamental requirements for a verdict in a criminal case: "The verdict shall be unanimous. It shall be a general verdict returned by the jury to the judge in open court. The jury shall file a verdict slip with the clerk upon the return of the verdict." Rule 27 (b), entitled "Several Offenses or Defendants," then provides: "If there are two or more offenses or defendants tried together, the jury may, with the consent of the judge at any time during its deliberations return or be required by the judge to return a verdict or verdicts with respect to the defendants or charges as to which a

verdict has been reached; and thereafter the jury may in the discretion of the judge resume deliberation. The judge may declare a mistrial as to any charges upon which the jury cannot agree upon a verdict; provided, however, that the judge may first require the jury to return verdicts on those charges upon which the jury can agree and direct that such verdicts be received and recorded."

As worded, rule 27 (b) pertains to cases involving multiple defendants or multiple separate indictments or complaints that are "tried together." A lesser included offense contained within a single complaint, or within a single count of an indictment, is not a separate charge or a separate offense, nor would we refer to it as being "tried together" with the offense as charged. A defendant is tried on the offense as charged and, if the evidence warrants, the jury are given the option to convict the defendant of a lesser included offense that is contained within the offense as charged. A lesser included offense is part of a single charge, not a separate "charge" or separate "offense." A trial on a single complaint or indictment is not a trial on "two or more offenses," and the identification of applicable lesser included offenses at the time the case is submitted to the jury does not transform the trial into a trial on "two or more offenses."

That the term "two or more offenses . . . tried together" does not pertain to lesser included offenses contained within a single complaint or indictment is confirmed by reference to the requirements for "return" of a verdict under rule 27 (a). Where the jury have reached verdicts on some but not all "charges," rule 27 (b) provides that the judge may require the jury "to return a verdict or verdicts with respect to the defendants or charges as to which a verdict has been reached." A "return," however, requires a "general verdict." Mass. R. Crim. P. 27 (a). The term "general verdict" refers to "a verdict dispositive of the entire charge," not just a portion of the charge. *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 55 (1984) (*A Juvenile*). Rule 27 (a) also requires that the jury "file a verdict slip with the clerk upon the return of the verdict." Under our practice, a single verdict slip accompanies the indictment or complaint, not a separate verdict slip for each lesser included offense. Rule 27 (b) contemplates the "return" of verdicts on some "charges,"

followed by the resumption of deliberations with respect to the remaining "charges." The jury cannot, however, "file a verdict slip" with the clerk and then resume deliberations on remaining lesser included offenses that are reflected on that same verdict slip.

Thus, rule 27 (b) permits taking verdicts on less than all of the charges set forth in separate complaints, or separate indictments, or less than all of the charges against multiple defendants tried together. See, e.g., *Commonwealth* v. *Foster*, 411 Mass. 762, 762-763 & n.1 (1992) (jury returned verdicts of guilty on indictment charging assault with intent to commit rape of child and on one count of indictment charging violation of protective order prior to resuming deliberations resulting in acquittal on indictment charging rape of child and second count of violation of protective order; judge did not err in requiring jury to return verdicts separately, as such partial verdicts are permitted by rule 27 [b]); *Commonwealth* v. *LaFontaine*, 32 Mass. App. Ct. 529, 534-535 (1992) (separate verdicts taken on three of ten indictments against two defendants). See also *Commonwealth* v. *Floyd P.*, 415 Mass. 826, 830 (1993) (under rule 27 [b], judge could take verdicts on delinquency complaints charging armed robbery and aggravated rape and send jury back to deliberate on another complaint charging murder, but error to take verdicts when jurors had reached only "conditional or tentative agreement").

However, rule 27 (b) does not permit the taking of a verdict on anything less than the entirety of a single complaint or indictment, as that would not qualify as the "general verdict" required by rule 27 (a). See *A Juvenile, supra.* Indeed, *A Juvenile, supra* at 55 n.1, distinguished this very point: "Where a complaint or indictment, in multiple counts, charges multiple crimes (e.g., two separate murders; two separate armed robberies) a general verdict could be returned as to one of the counts, despite deadlock on the other counts." The court distinguished the situation presented by a single complaint containing lesser included offenses (in that case, "a complaint charging a single murder" but containing the lesser included offense of manslaughter). *Id.* This court announced its agreement with those jurisdictions that had "rejected the partial verdict" for lesser included offenses,

on the grounds that the taking of such partial verdicts "would constitute an unwarranted and unwise intrusion into the province of the jury" and that such partial verdicts might represent only "a temporary compromise in an effort to reach unanimity," not a truly final verdict. *Id.* at 56, quoting *People* v. *Hickey*, 103 Mich. App. 350, 353 (1981).[9] As such, the judge's reliance on rule 27 (b) as authority for the taking of partial verdicts in this case is at odds with the wording of the rule and this court's decision in *A Juvenile, supra.*

b. *Implications for double jeopardy.* In an apparent attempt to overrule *A Juvenile, supra,* and labeling it "a bad opinion," the defendant argues that, to avoid double jeopardy, the jury must be given an opportunity to return a partial verdict whenever they are deadlocked on a complaint or indictment that contains lesser included offenses. Otherwise, the argument goes, one cannot tell whether there was a manifest necessity for a retrial on the offense as charged, or on any offense higher than the lowest of the lesser included offenses. He argues that *if* the jury

---

[9]The defendant contends that our decision in *A Juvenile* v. *Commonwealth*, 392 Mass. 52 (1984) (*A Juvenile*), stands only for the narrower proposition that a judge is not required to make inquiry concerning partial verdicts, and that it does not prohibit a judge from taking partial verdicts on lesser included offenses. In *A Juvenile, supra*, a mistrial had been declared when the jury reported deadlock on a delinquency complaint charging murder. The juvenile had asked the judge to inquire about partial verdicts with respect to any lesser included offenses and objected to the declaration of a mistrial. On petition to this court, the juvenile sought to bar any retrial, arguing that there was no manifest necessity for the mistrial. While, viewed narrowly, the issue before the court was whether the judge was required to make inquiry concerning partial verdicts, this court's decision unambiguously expressed its disapproval of such partial verdicts. The court did so on both the technical ground that the "general verdict" required by Mass. R. Crim. P. 27(a), 378 Mass. 897 (1979), had to be a verdict "dispositive of the entire charge, and not a partial verdict," *id.* at 55, and because of policy concerns surrounding the practical ramifications of attempting to take such partial verdicts, *id.* at 56. *A Juvenile* has been widely understood as prohibiting the taking of partial verdicts on lesser included offenses contained within a single complaint or indictment. See Jury Trial Manual for Criminal Offenses Tried in the District Court § 2.86(3) (4th ed. 1987) ("partial verdict may be returned as to separately-charged complaints or counts," but judge "should not inquire into the status of jury deliberations on any lesser included offense within a complaint or count," citing *A Juvenile, supra*); *Whiteaker* v. *State*, 808 P.2d 270, 275 (Alaska Ct. App. 1991) (characterizing *A Juvenile, supra*, as "clearest and most comprehensive" of decisions rejecting use of partial verdicts on complaints "involving greater and lesser offenses").

have unanimously concluded that the Commonwealth has failed to meet its burden on one or more of the elements of the offense as charged, and have deadlocked only as to some aspect of a lesser included offense, he should have the benefit of that "acquittal" and should not have to endure being retried. That it would be desirable, for many reasons, to extract such information from a deadlocked jury (assuming that the jury have reached any such final conclusion as to the offense charged) does not solve the significant problems encountered in attempting to do so. As stated in *A Juvenile, supra* at 56, a judge's inquiry concerning possible partial verdicts improperly intrudes on the jury's function, and we remain of the view that the ostensible benefits to be gained by such a procedure are outweighed by its risks.

In assessing the merits of adopting some procedure by which deadlocked juries could be asked to render partial verdicts on lesser included offenses, we first note that, consistent with the prohibition on double jeopardy, the adoption of any such procedure would effectively require judges to inquire as to partial verdicts in all cases of deadlock. In other words, if a judge *may* request such a partial verdict but fails to do so, there is no "manifest necessity" for retrial on the offense as charged. Jurisdictions that permit such partial verdicts to be taken ultimately conclude that failure to do so bars retrial on anything other than the lowest of the lesser included offense contained within the complaint or indictment.[10] See *State* v. *Tate*, 256 Conn. 262, 287, 288 (2001) (where judge denied defendant's

---

[10]Notwithstanding the parties' efforts, a clear tally of the position of other jurisdictions on this issue is elusive. Only a limited number of cases speak directly to the propriety of taking partial verdicts on lesser included offenses, and they express diametrically opposed views on the subject. Compare *Whiteaker* v. *State*, 808 P.2d 270, 277-279 (Alaska Ct. App. 1991) (failure to inquire as to partial verdict means there is no manifest necessity to declare mistrial), and *State* v. *Tate*, 256 Conn. 262, 282-285 (2001) (same), with *People* v. *Hickey*, 103 Mich. App. 350, 353 (1981) (inquiry concerning partial verdict constitutes unwarranted intrusion into province of jury), and *State* v. *Booker*, 306 N.C. 302, 305-307 (1982) (same). Many of the cases cited by the defendant do not address the propriety of taking a partial verdict, or even relate how the partial verdict at issue arose, but instead address only the double jeopardy ramifications of such verdicts once they have been taken. See, e.g., *United States* v. *Gooday*, 714 F.2d 80, 83 (9th Cir. 1983), cert. denied, 468 U.S. 1217 (1984); *People* v. *Kettler*, 112 Ill. App. 3d 1061, 1067-1068 (1983), cert. denied, 465 U.S. 1031 (1984).

request to take partial verdict on murder charge, court "failed to explore all reasonable alternatives to declaring a mistrial" and there was no "manifest necessity" for declaring mistrial; defendant could only be retried on lowest lesser included offense of criminally negligent homicide). See also *Whiteaker* v. *State*, 808 P.2d 270, 277-279 (Alaska Ct. App. 1991); *Stone* v. *Superior Court*, 31 Cal. 3d 503, 517-520 (1982); *State* v. *Pugliese*, 120 N.H. 728, 730 (1980); *State* v. *Castrillo*, 90 N.M. 608, 613-614 (1977). Thus, in deciding whether to allow such partial verdicts, we can decide only between prohibiting them in all cases or requiring them in all cases. There is no "middle ground" of simply giving the trial judge discretion to take a partial verdict. Thus, one cannot point only to the merits of taking such verdicts in cases where the jury have conclusively decided that the defendant is not guilty of the offense as charged, but must consider the risks inherent in making such an inquiry in all cases, including those where there has not in fact been any such conclusive determination as of the time deadlock is reported.

The concerns surrounding partial verdicts that we articulated in *A Juvenile, supra,* remain valid. This case, with its illustration of the confusion inherent in attempting to take such verdicts, confirms our decision to adhere to the position announced in *A Juvenile, supra.* There, we first referenced the impropriety of "intrusion into the province of the jury." *Id.* at 56, quoting *People* v. *Hickey*, 103 Mich. App. 350, 353 (1981). Inquiry concerning partial verdicts on lesser included offenses, no matter how carefully phrased and delivered, carries a significant potential for coercion. We have previously recognized that deadlocked juries are particularly susceptible to coercion. See *Commonwealth* v. *Connor*, 392 Mass. 838, 844 (1984) ("general principle [that utmost caution is required to avoid invading province of jury] has been stressed in cases dealing with the wording of supplementary instructions to a deadlocked jury"); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 99 (1973) (misstatement in standard *Tuey* charge needed to be corrected "even if it is a slight one" due to "a tendency toward coercion"). The statutory prohibition on requiring jurors to

continue deliberations after their second report of deadlock, G. L. c. 234, § 34, also recognizes the coercive effect of continued deliberations in these circumstances. Where the jurors have twice reported themselves deadlocked, and have already heard the *Tuey-Rodriquez* charge, a judge's inquiry concerning partial verdicts cannot avoid communicating to the jury the judge's desire to salvage *something* from the trial. However the inquiry is articulated or explained, the import of the inquiry is unmistakable: "Can't you at least decide a part of this case?" The inquiry, by its nature, plays on the deadlocked jurors' natural sense of frustration, disappointment, and failure. The jurors are confronted with the request, and asked to absorb its inherent complexity, at the worst possible time, when they are tired, anxious to be discharged, and perhaps angry at fellow jurors whom they blame for failing to reach agreement. While technically inquiring only as to what the jurors have already agreed on, the request for partial verdicts broken down by lesser included offenses implicitly suggests that the jurors should try just a little bit harder to come back with at least a partial decision to show for all of their efforts. And, by definition, any further discussion amongst the jurors regarding their response to the judge's partial verdict inquiry would itself be further deliberation, in violation of G. L. c. 234, § 34.[11]

Indeed, as was done here, each time the jury were sent back to record their unanimous vote, starting with the offenses as charged, the judge gave the jurors the option of reporting back that the defendant was guilty — i.e., he gave them the option of reaching an *entire* verdict, notwithstanding their twice having reported a deadlock. If, as to any level of offense, the jury had returned with a verdict of guilty, there is no question that this defendant would be making a strenuous — and potentially meritorious — argument that that guilty verdict was the product of coercive intrusion into the function of the jury. For all the reasons that we would lack confidence in any verdict of guilty that was returned under such conditions, we should lack

---

[11]Because of our view that such verdicts should not be requested or taken at all, we need not address the many issues surrounding *how* they should be taken. As illustrated by the present case, however, the rendering of partial verdicts as to lesser included offenses is an undertaking fraught with complications that defy any simple or succinct explanation to a deadlocked jury.

confidence in any verdict of not guilty. There is simply too great a risk that such a verdict would merely be the product of one hasty, final attempt to satisfy the judge's apparent desire for some form of decision on the case.

In *A Juvenile, supra* at 56, we also recognized that, until there is a final verdict on the entire charge, one cannot be certain whether jurors have been proffering "compromise" votes in an attempt to reach a verdict.[12] The most recent "vote" immediately prior to reporting deadlock may well be tentative, a failed experiment in compromise, and not a true expression of each juror's assessment of the case. See *People* v. *Hickey,* 103 Mich. App. 350, 353 (1981) ("it must be recognized as a practical matter that jury votes on included offenses may be the result of a temporary compromise in an effort to reach unanimity"). See also *People* v. *Hall,* 25 Ill. App. 3d 992, 994 (1975). After the jury have reported that deadlock, a judge's request that the jury divulge the substance of their "final" vote may force the jury to report as "final" some votes that were not intended to be "final" unless they resolved the entire case.[13]

A request that the jury report such "partial verdicts" also presupposes that the jury's deadlock has centered on some distinction between the levels of offenses. However, one cannot assume, from the mere report of deadlock, that there is any

---

[12]This phenomenon has been seen in other cases. See, e.g., *Commonwealth* v. *Floyd P.,* 415 Mass. 826, 829 (1993) (note from foreperson requesting instruction on how to proceed where jury had unanimously voted guilty on charges of armed robbery and aggravated rape, but where two jurors stated they would change their votes "if the conviction on rape has to result in first degree murder").

[13]By comparison, where a defendant has been charged in separate indictments or complaints, each with a separate verdict slip, the jury's decision to return verdicts on some but not all of the indictments or complaints cannot be misunderstood by them as anything other than final. Cf. *Commonwealth* v. *Floyd P., supra* at 830-831 (judge erred in requiring jury to return verdicts on two delinquency complaints when jury's note explained tentative nature of their votes). Jurors are normally instructed to treat each indictment, or each complaint, separately. They are not instructed to treat lesser included offenses "separately" from the very charge within which they are contained. Thus, the taking of a partial verdict when the jury have reached a verdict on some but not all of the separate complaints or indictments, which set forth separate and distinct offenses, is permitted by Mass. R. Crim. P. 27 (b), 378 Mass. 897 (1979). We are unpersuaded by the defendant's contention that there should be no distinction between separate complaints or indictments and lesser included offenses.

"final" verdict lurking within that deadlock that may be extracted. In many instances, asking a deadlocked jury about partial verdicts would constitute attempting to extract from the jury something that does not exist. Deadlock may occur over threshold issues (e.g., identification) with little or no deliberation concerning the specific elements that would differentiate between the offense as charged and the lesser included offenses. Even if the deadlock does pertain to some distinction between the various levels of an offense, a judge has no way of knowing whether the jury have in fact fully considered the offense as charged. A jury may logically start their discussion with a consideration of the lowest lesser included offense, as, by definition, the lesser included offenses comprise the "building blocks" of the elements that lead up to the offense as charged. Deadlock may occur somewhere in that process before the jurors have even considered the additional elements that comprise the offense as charged. Asking a jury to report where they stand on the offense as charged invites a report that may be based on only preliminary, tentative deliberation (if any) on that level of offense, or hasty resumption of deliberations concerning that level of offense in an effort to satisfy the judge's apparent desire for a decision. Such inquiries of the jury may succeed in extracting a partial verdict, but we could not have confidence that that partial verdict was the product of a thoughtful and thorough deliberation process.[14]

We thus conclude that judges should not initiate any inquiry

---

[14]We note that several of the jurisdictions that permit the taking of partial verdicts on lesser included offenses do so because their instructions *prohibit* the jury from even considering any lesser included offense unless and until they have unanimously decided that the defendant is not guilty of the offense as charged. Such an instruction, often referred to as a "hard transition" instruction, thus requires the jury to reach a genuine "verdict" on the offense as charged before considering any other level of offense, and the taking of a partial verdict in such jurisdictions poses fewer problems than would be encountered in our courts. See *State* v. *Tate*, 256 Conn. 262, 279-283 (2001) (partial verdicts appropriate because of "hard transition" approach to deliberations, recognizing that partial verdicts are problematic in jurisdictions that have adopted "soft transition" approach); *State* v. *Pugliese*, 120 N.H. 728, 729 (1980) (instruction "not to consider the lesser offense unless it first considered the greater offense of manslaughter and found the defendant not guilty"). See also N.Y. Crim. Proc. Law § 310.70 (West 2002) (statutory requirement of partial verdicts on lesser included offenses); *People* v.

into partial verdicts premised on lesser included offenses within a single complaint or count of an indictment. In our view, the risks of juror coercion are too high, and the reliability of any such partial verdict returned is too low, to warrant such an approach to salvaging some partial result from a deadlocked jury. We remain of the view that such inquiries "constitute an unwarranted and unwise intrusion into the province of the jury." *A Juvenile, supra* at 56, quoting *People* v. *Hickey,* 103 Mich. App. 350, 353 (1981).

c. *Remedy.* To remedy this error, the Commonwealth asks that we set aside the verdicts entered in this case so that it may retry the defendant on the offenses as charged. However, principles of double jeopardy preclude such a retrial. While the judge's inquiry to the jury was in error, the jury did return verdicts of not guilty on certain offenses. As with any other form of error that results in acquittal, the defendant may not be retried on an offense as to which he was acquitted. See *Sanabria* v. *United States,* 437 U.S. 54, 64 (1978); *Commonwealth* v. *Lowder,* 432 Mass. 92, 105 (2000). The defendant here may only be retried on the remaining lesser included offenses on which no verdict was reached.

The Commonwealth argues that the normal procedures for the return and recording of verdicts were not followed and that we therefore may set aside the verdicts of not guilty. Specifically, the Commonwealth complains that the verdict slips were not filled out or signed, that the foreperson did not announce the verdicts, and that the clerk did not record them with the customary colloquy. The argument is unavailing. While the Commonwealth objected at various points and on various grounds to the judge's decision to take partial verdicts, the Commonwealth did not object to the absence of the specific formalities that it now raises. Such technical defects, if raised

---

*Boettcher,* 69 N.Y.2d 174, 181-183 (1987) (mandating use of "hard transition" instruction). We are not a "hard transition" jurisdiction, as we give juries free rein to conduct their deliberations as they see fit. When presented with the option of lesser included offenses, our juries are told that if they find the defendant guilty, they must return a verdict of guilty of the highest crime that has been proved beyond a reasonable doubt. *Commonwealth* v. *O'Brien,* 432 Mass. 578, 591 (2000). However, nothing in such an instruction dictates the manner or order in which the jury decide to organize their discussion.

before the jury are discharged, are readily cured, and failure to make a timely objection waives the issue. See *Commonwealth v. Fowler*, 431 Mass. 30, 36 (2000). Moreover, while the taking of these verdicts was unorthodox in the extreme, the purposes of the customary procedures for taking verdicts were adequately satisfied when the jurors were polled.[15] "The verdict is the formal decision of the jury, empaneled and sworn to try the case, as reported to the court. 'The verdict which determines the rights of the parties, and is admitted of record, and upon which judgment is rendered, is the verdict received from the lips of the foreman in open court.' " *Commonwealth v. Martell*, 407 Mass. 288, 292 (1990), quoting *Commonwealth v. Tobin*, 125 Mass. 203, 206 (1878). Here, the foreperson and each of the jurors in turn announced verdicts of not guilty as to the specific offenses. The poll provided adequate evidence of "the free and unanimous assent of the jury to the verdict," which is the purpose of the various customs and rituals that surround the taking of a verdict. *Commonwealth v. Fowler, supra* at 35, quoting *Rich v. Finley*, 325 Mass. 99, 106 (1949). See *Commonwealth v. Lawson*, 425 Mass. 528, 531-532 (1997). It would elevate form over substance to conclude that the jury did not return the verdicts that were subsequently entered, and the technical defects now raised by the Commonwealth do not provide a basis for setting those verdicts aside.

3. *Conclusion.* The matter is remanded to the county court for the entry of an order denying the Commonwealth's petition.

*So ordered.*

---

[15]On the second indictment, the Commonwealth expressly waived polling after initially requesting it. The partial verdicts rendered on the second indictment required proof of the same elements as those rendered on the first indictment, the sole difference being that the victim in the first indictment died while the victim in the second indictment sustained serious injury. The Commonwealth apparently recognized that the verdicts were, as a practical matter, certain to be identical, and that a second polling would therefore not yield a different outcome on the second indictment.