The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Patricia J. LEWIS, Defendant-Appellee.

No. 82SA466.

Supreme Court of Colorado, En Banc.

Jan. 30, 1984.

Rehearing Denied Feb. 21, 1984.

**684**

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief App. Deputy Dist. Atty., Denver, for plaintiff-appellant.

Davis & Fritsche, William J. Fritsche, Morton L. Davis, Aurora, for defendant-appellee.

QUINN, Justice.

This appeal, which is brought by the People pursuant to section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), raises the single question of whether the trial court, when the jury has been deliberating on the charge of first degree murder and lesser included offenses and there is no indication either that a unanimous verdict is unlikely if deliberations continue or that the jury is deadlocked solely on the issue of the defendant's guilt as to a greater or lesser offense, should instruct the jury that, if it is satisfied of the defendant's guilt of at least one of the offenses but has a reasonable doubt as to which offense, it has the duty to find the defendant guilty of the lesser offense only. Because we conclude that under the particular circumstances of this case the instruction was coercive and incompatible with the requirement of a unanimous verdict, we disapprove the judgment.

## I.

The facts are undisputed. The defendant, Patricia J. Lewis, was charged with first degree murder by intentionally and after deliberation causing the death of her husband, Tom Lewis, Sr., on November 1, 1981.[1] After a trial resulting in a sanity

---

1. Section 18–3–102(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), states that a person commits the crime of murder in the first degree if "[a]fter deliberation and with the intent to cause the death of a person other than himself, [she] causes the death of that person or of another person." "Intentionally" or "with intent" means that the actor's conscious object is to cause the specific result proscribed by the statute defining the offense. Section 18–1–501(5), C.R.S.1973 (1978 Repl.Vol. 8). The term "after deliberation" is defined in section 18–3–101(3), C.R.S.1973 (1978 Repl.Vol. 8), as follows: "The term 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner."

verdict, trial on the merits commenced to a jury on September 8, 1982. Upon completion of the evidence, the trial court on September 14, 1982, submitted the case to the jury on the original charge of deliberated murder in the first degree and the lesser included offenses of murder in the second degree,[2] heat of passion manslaughter,[3] and criminally negligent homicide.[4]

During the second day of its deliberations the jury wrote a note informing the court that nine jurors had agreed on one verdict and three jurors on another verdict and requesting directions as to the appropriate procedure. The court met with counsel and, after much discussion on whether additional instructions should be given, excused the jury from further deliberations until the following morning.

On the next day the court met with counsel and decided to give two additional instructions to the jury. One of the instructions, to which the People did not object, directed the jurors, if not satisfied of the defendant's guilt beyond a reasonable doubt as to murder in the first degree, to then consider her guilt as to the lesser offenses of murder in the second degree, heat of passion manslaughter, and criminally negligent homicide, in that order. The other instruction, No. 20, stated as follows:

"You are instructed that if you find that the Defendant Patricia Lewis is guilty of an offense that has been charged within the information, including the lesser included offenses, but entertain a reasonable doubt as to which offense she has committed, then you have the duty to find the Defendant Patricia Lewis guilty only of the lesser offense."

The prosecution objected to Instruction No. 20 as premature and potentially coercive, but the objection was overruled. The jury, after receiving the additional instructions, resumed deliberations and eventually returned a guilty verdict to heat of passion manslaughter. A judgment of conviction entered on the verdict and, after the imposition of sentence the People filed this appeal.[5]

The People, as they did before the trial court, argue that Instruction No. 20 was

---

**2.** Section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), defines the crime of murder in the second degree as causing the death of a person knowingly, but not after deliberation. A person acts knowingly with respect to conduct or to a circumstance when she is aware that her conduct is of such nature or that such circumstance exists; a person acts knowingly with respect to a result when she is aware that her conduct is practically certain to cause the result. Section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8).

**3.** Section 18–3–104(1)(c), C.R.S.1973 (1983 Supp.), defines so-called "heat of passion" manslaughter as follows:

"[She] knowingly causes the death of another person under circumstances where the act causing the death was performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person; but if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder."

**4.** Criminally negligent homicide includes the causing of another's death by conduct amounting to criminal negligence. Section 18–3–105, C.R.S.1973 (1978 Repl.Vol. 8 & 1983 Supp.). "A person acts with criminal negligence when,

through a gross deviation from the standard of care that a reasonable person would exercise, [she] fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." Section 18–1–501(3), C.R. S.1973 (1978 Repl.Vol. 8).

**5.** At a sentencing hearing on November 10, 1982, the trial judge, at the request of the prosecutor, made the following statement of record about discussions with the jurors after the return of the verdict. The judge stated that, as was her usual procedure, she invited the jurors into chambers to thank them for their service and to answer questions about the trial. During this discussion it became apparent to the judge that the jury had been deadlocked nine to three, with the nine jurors convinced of the defendant's guilt as to second degree murder and three holding out for manslaughter. The judge also stated that the jurors believed they had to convict of the lower offense of manslaughter because of Instruction No. 20. We mention these comments by the judge to explain the nine-three division of the jury when it sent its note to the judge during deliberations. As noted in the special concurring opinion, any discussion by the trial judge with jurors about the merits of the case could be a source of future prejudice. The post-trial discussion in this case, however, is not an issue on this appeal.

both premature and coercive. It was premature, according to the People, because the trial court never determined whether further deliberations might be productive of a unanimous verdict and whether the jury impasse related to the issue of guilt or innocence or the level of offense. Also, in the People's view, the instruction was coercive because it required the jury to return a non-unanimous verdict on the lesser offense as long as all jurors were in agreement on the defendant's guilt to any one of the offenses submitted to them for their consideration. We agree with the People's arguments.

## II.

■ We recognize that in these days of increasing litigation judicial proceedings must necessarily be conducted in a manner that achieves maximum efficiency. However, as has been cogently observed, "while there is need to expedite the work of the courts, this cannot be done at the expense of the call of conscience." *United States v. Thomas*, 449 F.2d 1177, 1184 (D.C.Cir. 1971) (en banc). In Colorado, a verdict in a criminal trial must be unanimous. Crim.P.

23(a)(8) and 31(a)(3); section 18–1–406, C.R. S.1973 (1978 Repl.Vol. 8). Unanimity requires a free and untrammeled deliberative process that expresses the conscientious conviction of each individual juror. *E.g., Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971); *In re Allison*, 13 Colo. 525, 22 P. 820 (1889). Any judicial effort to avert a deadlocked jury must be approached with a sensitive regard for a juror's right to hold to his or her honestly held beliefs about the particular case. An instruction that constrains an individual juror to surrender these beliefs merely for the sake of returning a verdict is, to that extent, antithetical to the unanimity requirement.

Because of the coercive effect of the so-called *"Allen* charge" or "third degree instruction," [6] the Chief Justice of the Colorado Supreme Court in 1971 issued a directive [7] proscribing the use of the *Allen* charge in all trials in this state and authorizing in its stead an instruction similar to Standard 5.4 of the *ABA Standards Relating to Trial by Jury* (1968).[8] For much the same reason we disapproved the so-called "time fuse" instruction, which told the jury that a mistrial would be declared in the

---

**6.** The *Allen* charge finds its origin in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In that case the Supreme Court affirmed a murder conviction based in part upon additional instructions given to the jury, after the main charge had been delivered, when it became apparent that the jury was unable to reach a verdict. These instructions were quite lengthy and stated, *inter alia:* that, if much the larger number were for conviction, a dissenting juror should consider whether his or her doubt was a reasonable one which made no impression upon the minds of so many other jurors, equally intelligent and honest, and that, on the other hand, if the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

**7.** The directive, which was issued on September 22, 1971, stated as follows:

"IT IS HEREBY ORDERED that the 'Allen' Instruction, otherwise known as the Third Degree Instruction, be no longer given to juries in trials conducted in this state. If it appears that a jury has been unable to agree, the trial court may in its discretion require the jury to

continue its deliberations and may give an instruction which informs the jury that:

1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment;

2) Each juror must decide the case for himself, but only after an impartial consideration with his fellow jurors;

3) In the course of deliberation, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous; and

4) No juror should surrender his honest conviction as to the weight and effect of the [evidence] solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

"A jury shall be discharged by the trial judge without having agreed upon a verdict if it appears to the trial judge that there is no reasonable probability of agreement."

**8.** The ABA House of Delegates approved Standard 5.4 in August 1968. Standard 5.4 was again adopted in August 1978, when the standards were updated, and can be found at III *ABA Standards for Criminal Justice* 15–4.4 (2d ed. 1980).

event a verdict was not reached within a prescribed time limit. *Allen v. People,* 660 P.2d 896 (Colo.1983). Even in the case of a prolonged and unproductive deliberative process, we have cautioned that any additional instruction directed towards averting a deadlocked jury should be preceded by an inquiry "as to whether any progress has been made toward reaching an agreement and what the likelihood is for such future progress." *Lowe v. People, supra* at 495–96, 488 P.2d at 561.

Although these principles were formulated in the context of jury deadlocks on the issue of guilt or innocence, they should not be disregarded merely because the impasse centers on the particular degree of offense. In the latter instance, while there undoubtedly will be agreement on the guilt of the defendant to some offense, a judge must be careful not to preempt further deliberations by directing the jury to return a guilty verdict on the lesser offense when further deliberations might well be productive of a verdict truly reflective of the personal judgment of each individual juror. Care must also be taken that, in the event an additional instruction is given to avert a mistrial due to a jury deadlock, some jurors are not forced to join in a guilty verdict to a lesser offense that involves elements not necessarily included in a greater offense when these jurors are not satisfied of the existence of these additional elements.

## III.

In this case the trial court unduly interfered with the deliberative process of the jurors when it submitted to them Instruction No. 20. The jury note that prompted this instruction merely stated that nine jurors agreed on one verdict and three on another verdict and requested some guidance from the court as to the appropriate procedure to follow in this situation. The court did not determine whether further deliberations might be productive of a verdict, nor did it inquire of the jury about the general nature of the impasse. Before considering any additional instruc-

tion, the court should first have asked whether any progress was being made towards reaching a unanimous verdict, what the likelihood was of a verdict being returned upon further deliberations, and whether the deadlock centered on the issue of guilt or innocence or the particular degree of guilt. Only if the jury indicated that further deliberations would be unavailing and that the deadlock related to the level of offense should the court have considered some additional instruction, but not the one given here.

The effect of the challenged instruction was to require those jurors favoring a guilty verdict on a greater inclusive offense to return a guilty verdict on the least serious offense on which one or more jurors agreed, as long as all jurors agreed on the defendant's guilt as to some crime, notwithstanding the fact that further deliberations might well have resolved the nine-three impasse in a manner satisfactory to all the jurors. Instruction No. 20, to this extent, required those jurors favoring a guilty verdict on a greater inclusive offense to surrender their honest convictions solely in the interest of reaching a verdict.

The defendant, in urging us to approve Instruction No. 20, argues that, because heat of passion manslaughter is a lesser included offense of first and second degree murder, all jurors favoring a guilty verdict on a greater inclusive offense would necessarily have determined the defendant's guilt on the lesser offense of manslaughter. Thus, the argument concludes, Instruction No. 20 did not undermine jury unanimity by coercing a compromise verdict. We find this argument unpersuasive.

As previously noted, the giving of Instruction No. 20 was itself an undue intrusion on the right of the jurors to deliberate without constraining pressures from the court because it was given without the court first determining whether there was some prospect of a unanimous verdict being reached, and, if not, whether the general nature of the deadlock centered on the level of offense rather than the issue of guilt or innocence. Moreover, although a

defendant charged with first or second degree murder is entitled to an instruction on manslaughter as long as there is some evidence, however slight, tending to establish the lesser offense, *e.g.*, *People v. Shaw*, 646 P.2d 375 (Colo.1982); *Crawford v. People*, 12 Colo. 290, 20 P. 769 (1888), heat of passion manslaughter is not a pure lesser included offense of either first or second degree murder. This is so because the greater inclusive offenses of first and second degree murder do not necessarily establish every essential element of this form of manslaughter. *See generally People v. Rivera*, 186 Colo. 24, 27, 525 P.2d 431, 433 (1974) (statutory lesser included offense "mandates that the greater offense must establish every essential element of the lesser included offense"); section 18–1–408(5)(a), C.R.S.1973 (1978 Repl.Vol. 8) (offense is lesser included when "established by proof of the same or less than all the facts required to establish the commission of the offense charged").

■ The crime of first degree murder after deliberation requires a specific intent to cause death, acting "after deliberation," and causing the death of another person. Section 18–3–102(1)(a), C.R.S.1973 (1978 Repl.Vol. 8). Murder in the second degree consists of causing the death of a person "knowingly," but not after deliberation. Section 18–3–103(1)(a), C.R.S.1973 (1978

Repl.Vol. 8). Heat of passion manslaughter, like second degree murder, also requires knowingly causing the death of another not after deliberation but, in contrast to second degree murder, requires that the death causing act be committed "upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person." Section 18–3–104(1)(c), C.R.S.1973 (1983 Supp.). Thus, contrary to the defendant's argument, a determination by some jurors that the defendant committed first or second degree murder would not necessarily mean that these same jurors were convinced beyond a reasonable doubt of the added elements necessary for heat of passion manslaughter. Instruction No. 20, by imposing on the jury the duty to return a guilty verdict to the lesser offense, as long as all jurors were satisfied of the defendant's guilt as to one of the crimes submitted to them, compelled those jurors unconvinced of the provocation elements of manslaughter to nonetheless return a guilty verdict to that offense.[9]

## IV.

■ In order to provide trial courts with some guidance in the matter of in-

---

9. We recognize that some jurisdictions have approved an instruction similar to Instruction No. 20. Most of these decisions, however, are based upon statutory law requiring a guilty verdict to the lesser offense when the jury is deadlocked as to the degree of guilt only. *See, e.g., People v. Williams*, 235 Cal.App.2d 389, 45 Cal.Rptr. 427 (1965) (relying on *People v. Dewberry*, 51 Cal.2d 548, 334 P.2d 852 (1950), which cited section 1097 of the California Penal Code requiring that "[w]hen it appears that the defendant has committed a public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only."); *Carey v. State*, 91 Idaho 706, 429 P.2d 836 (1967) (Idaho statute, section 19–2105 of the Idaho Code, providing that if a jury has "reasonable ground of doubt in which of two or more degrees he [the defendant] is guilty, he can be convicted of the lowest of such degrees only."); *State v. Trujillo*, 225 Kan. 320, 590 P.2d 1027 (1979) (Kansas statutory provision, section 21–3109 of the Kan-

sas Statutes Annotated, stating that "[w]hen there is a reasonable doubt as to which of two or more degrees of an offense [the defendant] is guilty, he may be convicted of the lowest degree only."); *State v. Stationak*, 73 Wash.2d 647, 440 P.2d 457 (1968) (Washington statute, section 10.-58.020 of the Revised Code of Washington, requiring that "when an offense has been proved against [the defendant], and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest."). There is no such statutory mandate in Colorado. Moreover, even though some additional instruction calculated to avert a jury deadlock on the issue of degree of guilt might be appropriate when pure statutory lesser included offenses are involved, the crime of heat of passion manslaughter is not such a lesser included offense, as it involves provocation elements not essential to first or second degree murder. We therefore decline the defendant's invitation to follow these decisions of other jurisdictions in resolving the issue before us.

structing a deadlocked jury deliberating a charge involving lesser offenses, we offer the following guidelines. Before giving any additional instruction calculated to avert a mistrial due to jury disagreement over the level of offense, the court should make certain inquiries of the jury. In making these inquiries care must be taken to avoid asking the jury how it is numerically divided and also to avoid disclosure by the jury as to the particular offenses about which a deadlock might exist. Also, any additional instruction ultimately given to the jury should be in typewritten form, should be read by the judge to the jury in open court, and then taken by the jury when it again resumes its deliberations.

■ The court should first ask the jury whether there is a likelihood of progress towards a unanimous verdict upon further deliberation. An affirmative response should require further deliberation without any additional instruction. If the jury indicates that the deadlock is such that progress towards a unanimous verdict is unlikely, the court should then inquire whether the jury is divided over guilt as to any one of the offenses and nonguilt as to all offenses, or instead, whether the division centers only on the particular degree of guilt. In the event the jury impasse relates solely to the issue of guilt as to any one of the offenses and nonguilt as to all offenses, the court in its discretion may give *Colo.J.I. (Crim.)* 38:14 (1983), which is patterned after *ABA Standards for Criminal Justice* 15–4.4 (2d ed. 1980) and the 1971 directive of the Chief Justice.[10] If, however, the jury deadlock centers solely on a particular degree of guilt, rather than on the issue of guilt or nonguilt, then the court should consider an additional instruction charging the jury to return a guilty verdict on the lesser offense as long as every essential element of the lesser offense is necessarily included in the greater offense and all jurors unanimously agree on the defendant's guilt as to either the lesser or greater offenses submitted to them for their consideration.[11] When, as here, a lesser offense involves elements that are not necessarily included in a greater offense, the additional instruction should set forth these non-included elements and, further, should advise the jury that before the defendant can be found guilty of this particular lesser offense each of the jurors must be satisfied beyond a reasonable doubt that the defendant acted in such a manner so as to satisfy all the non-included elements. Such an instruction will avoid the constraining effects of a charge requiring all jurors, as long as unanimity exists on the defendant's guilt as to some offense, to join in a guilty verdict to a lesser offense

---

10. *Colo.J.I. (Crim.)* 38:14 (1983) states:

"Since it appears to the Court that your deliberations have been somewhat lengthy without a verdict being reached, the Court wishes to suggest a few thoughts which you should consider in your deliberations, along with the evidence in the case and all of the instructions previously given.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching a verdict, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

"You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

11. We recognize that in *Lowe v. People,* 175 Colo. 491, 496, 488 P.2d 559, 561 (1971), it was stated that the trial court, in making inquiry of the jury as to the likelihood of future progress towards a verdict, should "try to carefully avoid any disclosure as to whether the divided jury is for conviction or acquittal." This admonition is generally true in cases that do not involve lesser offenses. *Lowe* was such a case. We believe, however, that when lesser offenses have been submitted to the jury, the only fair way for the court to resolve the propriety of giving a deadlocked jury an additional instruction that in effect charges it to return a guilty verdict to the lesser offense, as long as unanimity exists on the issue of guilt to some offense, is to determine before the instruction is given that the nature of the deadlock centers on the degree of guilt.

that involves elements not necessarily included in a greater offense, when some jurors are unconvinced of the existence of these added elements.

## V.

Instruction No. 20 was given in this case without any determination by the trial court that progress towards a unanimous verdict was unlikely and that the jury was deadlocked over the particular offense as to which a guilty verdict should be returned. The instruction, in this respect, unduly interfered with the deliberative process of the jurors by depriving them of a meaningful opportunity to reach a unanimous verdict free of the constraining influence of the court. Further, Instruction No. 20 directed the jury to return a guilty verdict on a lesser offense, some elements of which were not necessarily established by proof of the defendant's guilt as to the greater offense, so long as all the jurors were satisfied of the defendant's guilt as to the lesser or some greater offense. The instruction, in this particular, undermined the requirement of a unanimous verdict by compelling some jurors to surrender their honest convictions solely in the interest of reaching a verdict.

The judgment is accordingly disapproved.

NEIGHBORS, J., concurs and specially concurs.

LOHR, J., joins in the concurrence and special concurrence.

NEIGHBORS, Justice, concurring and specially concurring:

I concur in the opinion and judgment of the court. I write separately, however, only for the purpose of expressing my strong opposition to trial judges discussing the merits of the case with the jurors who returned the verdict. In footnote 5 of the court's opinion, we learn that the trial judge discussed this case with the jurors who rendered the verdict.

A serious and substantial twofold problem is created when judges participate in post-verdict discussions with jurors about the merits of the trial. First, no matter how conscientious and detached a judge may be, he or she may be influenced, at least to some extent, by the jurors' comments when later ruling on motions for a new trial in both civil and criminal cases, as well as sentencing in a criminal proceeding. For instance, evidentiary rulings or instructions which caused the jury to reach a result which the judge believes is unfair may cause the judge, subconsciously, to exercise discretion in a way not justified under the totality of the evidence. Second, comments by the trial judge to the jurors about the attorneys, evidence, instructions, verdict and the like, may so taint a juror that he or she is disqualified from future jury service. For example, comments by the judge about the possible reasons that a defendant in a criminal case did not testify or the judge's opinions of expert witnesses in a civil case may become fixed in a juror's mind so that the juror would find it difficult to serve in another case. Generally, jurors have the highest respect for trial judges. Therefore, any comments by the judge must be made with great caution and circumspection, lest they be misinterpreted or misunderstood by the jurors.

I have no objection to judges discussing administrative details of jury service with the jurors. However, I am firmly convinced that any discussion of the merits of the case with jurors is perilous for the litigants, the jurors, and the judge.

I am authorized to say that Justice LOHR joins me in the concurrence and special concurrence.