**In re the PEOPLE of The State of Colorado, Plaintiff**

v.

**Marvin RICHARDSON, Defendant.**

No. 07SA191.

Supreme Court of Colorado, En Banc.

May 19, 2008.

Rehearing Denied June 9, 2008.*

* Justice Martinez would grant the Petitions; Justice Bender does not participate.

Mitchell R. Morrissey, District Attorney, 2nd Judicial District Robert J. Whitley, Chief Appellate Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff.

Isaacson Rosenbaum, P.C., Gary Lozow, Blain Myhre, Denver, Colorado, Attorneys for Defendant.

Justice EID delivered the Opinion of the Court.

We issued a rule to show cause to consider whether the trial court erred by declaring a mistrial when the jury failed to return a verdict on the charge of first-degree murder against Defendant Marvin Richardson. Richardson argues that the mistrial was not manifestly necessary as to the offenses of first- and second-degree murder because the jury unanimously agreed he was not guilty of those offenses and the jury was deadlocked only as to the lesser-included offenses of manslaughter and criminally negligent homicide. Richardson further argues that the trial court should have conducted a partial verdict inquiry before declaring a mistrial, and he offers affidavits from the jurors to support his claim that had a partial verdict inquiry been conducted, the jury would have acquitted him of the offenses of first- and second-degree murder.

We now hold that a mistrial was manifestly necessary because the jury was deadlocked as to the first-degree murder charge. Consequently, double jeopardy does not bar retrial of Richardson on the first-degree murder charge or its lesser-included offenses of second-degree murder, manslaughter, and criminally negligent homicide. We further hold that the trial court properly refused Richardson's requests to poll the jury as to the offenses of first- and second-degree murder and to consider the jurors' affidavits as

evidence of a partial verdict. We therefore discharge the rule to show cause.

## I.

While driving a pickup truck on September 11, 2005, Richardson struck and killed his cousin, Ricky Smith. As a result, Richardson was ultimately charged with first-degree murder, vehicular homicide (DUI), and vehicular homicide (reckless). All three charges were submitted to the jury, and lesser-included offenses were also submitted with two of the charges. In particular, the lesser-included offenses of second-degree murder, manslaughter, and criminally negligent homicide were submitted with the first-degree murder charge; and the lesser-included offense of careless driving resulting in death was submitted with the vehicular homicide (reckless) charge.

The jury received three verdict forms, one for each charge. The forms containing lesser-included offenses followed the format recommended by the Colorado Jury Instructions, CJI–Crim. 38:07. The relevant portion of the form for first-degree murder reads as follows:

### JURY VERDICT

### CHARGE OF MURDER IN THE FIRST–DEGREE

I.* We, the jury, find the Defendant, **MARVIN RICHARDSON**, NOT GUILTY of Murder in the First-degree and the lesser included offenses of Murder in the Second-degree, Manslaughter and Criminally Negligent Homicide against Ricky Smith.

_____

Foreperson

II.* We, the jury, find the Defendant, **MARVIN RICHARDSON**, GUILTY of:

* *[ ] Murder in the First-degree

* *[ ] Murder in the Second-degree* * *

* *[ ] Manslaughter

* *[ ] Criminally Negligent Homicide

_____

Foreperson

*The Foreperson should sign only one of the above (I or II). If the verdict is NOT GUILTY, then I above should be signed. If the verdict is GUILTY, then II above should be signed.

**If you find the Defendant guilty of the crime charged or one of the lesser included offenses the foreman must complete this GUILTY verdict by placing, in ink, an "X" in the appropriate square. ONLY ONE SQUARE may be filled in, with the remainder to remain unmarked.

Thus, while the form permitted the jury to find Richardson not guilty on first-degree murder and the lesser-included offenses of second-degree murder, manslaughter, and criminally negligent homicide as a collective matter, there was no place on the form for the jury to return a not-guilty verdict on first-degree murder, second-degree murder, manslaughter, or criminally negligent homicide as an individual matter. The only individual consideration appeared in the guilty portion of the form, which allowed the jury to find Richardson guilty of first-degree murder, second-degree murder, manslaughter, or criminally negligent homicide. Nothing in the record indicates that Richardson objected to structuring the first-degree murder verdict form in this way.

The jury began deliberations on Tuesday, March 6, 2007. On Friday, March 9th, the jury sent the trial court a note asking, "How long do we continue to deliberate without coming to a consensus? At what point do we become a hung jury?" The court answered, "You should continue to deliberate so long as progress is being made toward a unanimous verdict." Richardson objected to this answer, arguing that the jury should be told it is not a hung jury if the jurors have reached unanimity on any count. The court overruled the objection, stating, "I've not interpreted the question to mean that [the jury has] reached unanimity of anything.... It's simply an inquiry from the jury about what's next and how long should we try."

Later the same day, the jury asked for and received permission to go home for the weekend. The trial court denied Richardson's request for the court to inquire, under *People v. Lewis*, 676 P.2d 682 (Colo.1984), whether

the jury was making any progress toward a unanimous verdict, and if not, whether the jury was divided over Richardson's guilt or innocence as to one of the charges, or whether the division only concerned Richardson's degree of guilt. The court based its decision on its conclusion that "[t]he jury has not expressed any indication that they are a hung jury."

Deliberations resumed the following Monday, March 12th, and the jury sent a note asking, "If we have reached consensus regarding a particular charge but have some people who think the defendant is guilty of a higher charge have we reached unanimity regarding the lesser charge according to the law?" Richardson requested that the trial court provide the following instruction:

> You should return a guilty verdict on any lesser included offense, only if all jurors unanimously agree on the defendant's guilt as to the lesser included offense and no juror remains convinced beyond a reasonable doubt by the facts and law that the defendant is guilty of a greater offense submitted for the jury's consideration.

The People, however, objected to this instruction on the ground that it was barred by section 18–1–408(8), C.R.S. (2007),[1] because it instructed the jury to convict on a lesser-included offense.

The trial court agreed with the People, stating:

> The Court believes that 18–1–408(8) is mandatory in its language and that it prevents the Court from instructing the jury further regarding reaching a consensus on the guilt of the defendant on a lesser charge so long as there is a remaining juror who believes the defendant is guilty of a greater offense and that if the prosecution wishes to prevent any other inquiry of the jury as to lesser included offense, that that statute entitles them to do that.

Instead of giving the jury Richardson's proposed instruction, the court provided the following answer to the jury's question: "If any juror remains convinced by the facts and law

that the defendant is guilty of a greater offense, then the jury has not reached unanimity. You should continue to deliberate if there is a likelihood of progress toward a unanimous verdict on any charge."

The jury subsequently sent a note announcing that they had reached a unanimous decision on one charge, but that they had stopped making progress toward a unanimous decision on the other two charges. At this point, Richardson requested that the trial court instruct the jury to return a verdict on any greater-included or lesser-included offense as to which they had reached unanimity. The court declined this request and accepted three verdict forms from the jury. The form for vehicular homicide (DUI) was signed and found Richardson not guilty. However, the forms for first-degree murder and vehicular homicide (reckless) were unsigned and unmarked.

Richardson requested the trial court to poll the jury as to their unanimity on the charge of first-degree murder and the lesser-included offense of second-degree murder, but the court refused. The court acknowledged that the jury had returned a verdict solely on the charge of vehicular manslaughter (DUI) and asked each juror, "Is this your verdict?" Each juror replied "yes," and the court dismissed the jury. The court then denied Richardson's second request to poll the jury. The court also discussed the need to set a date for retrial, and eventually scheduled a hearing to conduct further proceedings and set the retrial date. Although it did not expressly declare a mistrial at that time, the court's order dated March 14, 2007, stated that the jury had "failed to reach a verdict as to Counts One and Three" and that "[t]he Court declared a mistrial and will proceed to set the case for retrial within 90 days of [March 12, 2007]."

Richardson subsequently hired investigators to interview the jurors. The investigators obtained affidavits from all twelve jurors stating that the jury had unanimously agreed

---

1. Section 18–1–408(8) provides:
 Without the consent of the prosecution, no jury shall be instructed to return a guilty verdict on a lesser offense if any juror remains convinced by the facts and law that the defendant is guilty of a greater offense submitted for the jury's consideration, the retrial of which would be barred by conviction of the lesser offense.

that Richardson was not guilty of first- or second-degree murder. Based on the affidavits, Richardson moved to dismiss these charges on double jeopardy grounds. The People stipulated to the affidavits for purposes of the motion only, but argued that CRE 606(b)[2] prohibited the court from considering them. The trial court agreed and denied Richardson's motion. We issued a rule to show cause.

## II.

The overarching issue in this case is whether the first- and second-degree murder charges against Richardson should be dismissed. Richardson argues that double jeopardy bars a retrial on those charges because there was no manifest necessity for a mistrial. Richardson also argues that the jurors' affidavits should be considered in addressing his double jeopardy claim. We consider each argument in turn.

## A.

■ "Double jeopardy is a constitutional guarantee prohibiting the retrial of a defendant who already has been tried for the same offense." *People v. Berreth*, 13 P.3d 1214, 1216 (Colo.2000). One principle of double jeopardy is that the defendant "is entitled to have his trial completed by a particular tribunal." *People v. Schwartz*, 678 P.2d 1000, 1011 (Colo.1984). However, a mistrial may be declared if manifestly necessary, and the defendant may then be subject to a second trial. *Id.; accord Berreth*, 13 P.3d at 1216. The existence of manifest necessity depends on the circumstances of the case. *Berreth*, 13 P.3d at 1216–17; *Schwartz*, 678 P.2d at 1011. Jury deadlock is one circumstance that may warrant a mistrial. *Berreth*, 13 P.3d at 1217; *Schwartz*, 678 P.2d at 1011; *see also* § 18–1–301(2)(b)(IV), C.R.S. (2007) (The trial court may declare a mistrial if it

finds that "[t]he jury is unable to agree upon a verdict."). In order for a mistrial to be manifestly necessary, "the jury must actually be unable to reach a verdict." *Schwartz*, 678 P.2d at 1011. This determination lies within the trial court's discretion. *Id.* When dealing with a deadlocked jury, the trial court "should employ all legal and reasonable measures to secure a verdict," but it must also take care to avoid "the coercion of verdicts by improper ... influence." *Barriner v. Dist. Court*, 174 Colo. 447, 453, 484 P.2d 774, 776 (1971) (citation and quotation omitted).

■ We begin by determining whether the trial court did in fact declare a mistrial due to jury deadlock as to the charge of first-degree murder. When the jury returned the three verdict forms, the court did not expressly declare a mistrial. However, with respect to the first-degree murder charge, the court did acknowledge that the jury had failed to return a signed verdict form and that a retrial would be necessary. The parties and the court then discussed possible dates for a retrial. Two days later, the court issued an order stating that a mistrial had been declared. Although the court did not expressly declare a mistrial at the time the jury returned the unsigned verdict form, the record in this case shows that the court and the parties understood that a mistrial had been declared. We therefore conclude that the trial court did in fact declare a mistrial based on jury deadlock as to the charge of first-degree murder.

■ Our next inquiry is whether the mistrial was manifestly necessary—that is, whether the jury was actually unable to reach a verdict on the charge of first-degree murder. As the verdict form indicated, the jury had two options: (1) acquit Richardson of first-degree murder and all lesser-included

2. CRE 606(b) states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental process in connection

therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

offenses, or (2) convict him for either first-degree murder or one of the lesser-included offenses. Unanimity was required as to either option. *See* Crim. P. 23(a)(8), 31(a)(3); *see also* § 18–1–406(1), C.R.S. (2007). However, the jury's questions on Friday, March 9th and Monday, March 12th indicated that no unanimity had been reached as to either option. Although all jurors agreed Richardson was guilty of some homicide offense (preventing unanimity on option 1), they disagreed over the particular offense (preventing unanimity on option 2). In other words, the jury was deadlocked[3] as to the degree of Richardson's guilt.

In *People v. Lewis,* we addressed the issue of how a trial court should handle a jury that is deadlocked as to the degree of guilt. 676 P.2d 682 (Colo.1984). There, we gave trial courts the following guidance:

> The court should first ask the jury whether there is a likelihood of progress towards a unanimous verdict upon further deliberation. An affirmative response should require further deliberation without any additional instruction. If the jury indicates that the deadlock is such that progress towards a unanimous verdict is unlikely, the court should then inquire whether the jury is divided over guilt as to any one of the offenses and nonguilt as to all offenses, or instead, whether the division centers only on the particular degree of guilt. In the event the jury impasse relates solely to the issue of guilt as to any one of the offenses and nonguilt as to all offenses, the court in its discretion may give *Colo. J.I. (Crim.)* 38:14 (1983), which is patterned after *ABA Standards for Criminal Justice* 15–4.4 (2d ed.1980) and the 1971 directive of the Chief Justice. *If, however, the jury deadlock centers solely on a particular degree of guilt, rather than on the issue of guilt or nonguilt, then the court should consider an additional instruction charging the jury to return a guilty verdict on the lesser offense as long as every essential element of the lesser offense is necessarily included in the greater offense and all*

> *jurors unanimously agree on the defendant's guilt as to either the lesser or greater offenses submitted to them for their consideration.*

*Lewis,* 676 P.2d at 689 (footnotes omitted) (emphasis added). However, *Lewis* instructions are not constitutionally required, and instead, are left to the discretion of the trial court. *See id.* (offering "guidelines" for dealing with deadlocked juries); *People v. Barnard,* 12 P.3d 290, 295 (Colo.App.2000) ("[T]he giving of [a *Lewis* ] instruction is not mandatory.").

Sixteen years after our decision in *Lewis,* the General Assembly added subsection (8) to section 18–1–408, C.R.S. ("Prosecution of multiple counts for same act."). *See* Ch. 131, sec. 5, § 18–1–408, 2000 Colo. Sess. Laws 451, 453. Subsection (8) states:

> Without the consent of the prosecution, *no jury shall be instructed to return a guilty verdict on a lesser offense* if any juror remains convinced by the facts and law that the defendant is guilty of a greater offense submitted for the jury's consideration, the retrial of which would be barred by conviction of the lesser offense.

§ 18–1–408(8) (emphasis added).

Contrary to *Lewis's* guidelines, section 18–1–408(8) expressly prohibits the trial court from alleviating jury deadlock over the degree of guilt by instructing the jury, without the prosecution's consent, to return a guilty verdict on a lesser-included offense. Rather, if *any juror* remains convinced by the facts and the law that the defendant is guilty of a greater offense, the jury cannot be instructed, without the prosecution's consent, to return a verdict on a lesser-included offense. Because *Lewis* instructions are not constitutionally required, the General Assembly may prohibit or alter them. Therefore, we hold that section 18–1–408(8) abrogates the part of *Lewis* that allows the trial court to instruct the jury, without the prosecution's consent, to return a guilty verdict on a lesser-included offense if the jury has reached

---

3. Contrary to Richardson's suggestion, the record does not establish that the jury determined to acquit him of first- and second-degree murder. The only evidence of the jury's deliberations on those charges comes from the juror affidavits submitted by Richardson, and as we discuss in Part II.B.2, those affidavits are inadmissible.

consensus as to the defendant's guilt but is deadlocked as to the degree of guilt.

■■ In light of our interpretation of section 18–1–408(8), we conclude that the trial court's responses to the jury's questions were proper. On the fourth day of deliberations, the jury asked how long they should continue to deliberate, and in keeping with *Lewis,* the trial court properly instructed the jury to "continue to deliberate so long as progress is being made toward a unanimous verdict." *See Lewis,* 676 P.2d at 689 ("The court should first ask the jury whether there is a likelihood of progress towards a unanimous verdict upon further deliberation."). On the fifth day of deliberations, the jury indicated they were deadlocked as to the degree of Richardson's guilt. As section 18–1–408(8) requires, the trial court told the jury, "If any juror remains convinced by the facts and law that the defendant is guilty of a greater offense, then the jury has not reached unanimity. You should continue to deliberate if there is a likelihood of progress toward a unanimous verdict on any charge." [4]

Later that afternoon, the jury indicated that they had reached a unanimous verdict on only one charge and that they were not making progress toward unanimity on the other two charges, one of which was first-degree murder. The trial court then accepted all three verdict forms and dismissed the jury. Under these circumstances, we hold that a mistrial as to the first-degree murder charge was manifestly necessary because the jury was actually unable to reach a verdict on that charge. *See Schwartz,* 678 P.2d at 1012 (affirming a mistrial declared after the trial court properly refused to give the defendant's requested instruction to a deadlocked jury).

■■ Consequently, double jeopardy does not bar retrial of Richardson on the charge of first-degree murder. Because the lesser-included offenses are considered the same as the greater offense for purposes of double jeopardy, *People v. Moore,* 877 P.2d 840, 844 (Colo.1994), on retrial the first-degree murder charge against Richardson may include the lesser offenses of second-degree murder, manslaughter, and criminally negligent homicide.

### B.

■■ As noted above, section 18–1–408(8) prevents the jury from being instructed, without the prosecution's consent, to return a verdict on a lesser-included offense if any juror remains convinced that the defendant is guilty of a greater offense. However, it does not prevent a jury from being presented with a verdict form that gives jurors the option of considering the charge and its lesser-included offenses on an individual basis, and acquitting the defendant on some or all of them. In other words, the verdict form that was given to the jury in this case—which allowed the jurors to return a not guilty verdict *only* if they found Richardson not guilty of first-degree murder, second-degree murder, manslaughter, and criminally negligent homicide—was not required by section 18–1–408(8). Nevertheless, Richardson did not object to the jury verdict form at trial, and does not directly challenge it before us on appeal.

Richardson does, however, challenge the verdict form indirectly by arguing that the jurors should have been given an opportunity to convey their conclusions with regard to the greater offense and lesser-included offenses through either (1) polling by the trial court, or (2) by juror affidavits. Richardson argues that the juror affidavits show, and polling by the trial court would have shown, that the jurors had reached unanimity on the first- and second-degree murder charges and would have acquitted him on those charges. He argues that double jeopardy therefore bars retrial on those charges. We consider

---

4. As noted above, at this point Richardson proposed the following instruction, which the trial court refused to give:

> You should return a guilty verdict on any lesser included offense, only if all jurors unanimously agree on the defendant's guilt as to the lesser included offense and no juror remains convinced beyond a reasonable doubt by the facts

and law that the defendant is guilty of a greater offense submitted for the jury's consideration.

Because the trial court properly instructed the jury under section 18–1–408(8), we need not consider the propriety of Richardson's proposed instruction.

Richardson's arguments based on jury polling and juror affidavits, and ultimately reject them both.

### 1.

▆▆▆▆ When Richardson asked the trial court to poll the jury when it returned the unsigned first-degree murder verdict form, he was essentially asking the court to conduct a partial verdict inquiry,[5] which Richardson believed would acquit him of the greater two of the four homicide offenses (i.e., first- and second-degree murder). Several other jurisdictions have addressed this issue, and the majority has held that if a single charge includes multiple degrees of offenses, the trial court may not conduct a partial verdict inquiry as to the offenses included within the charge. *See, e.g., People v. Hall*, 25 Ill.App.3d 992, 324 N.E.2d 50, 52–53 (1975); *State v. Bell*, 322 N.W.2d 93, 95 (Iowa 1982); *State v. McKay*, 217 Kan. 11, 535 P.2d 945, 947 (1975); *Commonwealth v. Roth*, 437 Mass. 777, 776 N.E.2d 437, 450 (2002); *People v. Hickey*, 103 Mich.App. 350, 303 N.W.2d 19, 21 (1981); *State v. Booker*, 306 N.C. 302, 293 S.E.2d 78, 80 (1982). The minority, on the other hand, has held that double jeopardy requires a partial verdict of acquittal as to the greater offenses if the jury is deadlocked only as to the lesser offenses.[6] *See, e.g., Whiteaker v. State*, 808 P.2d 270, 278 (Alaska Ct.App.1991); *Stone v. Superior Court*, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 820 (1982); *State v. Tate*, 256 Conn. 262, 773 A.2d 308, 321 (2001); *State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319, 1321 (1980).

*Commonwealth v. Roth* exemplifies the majority rule. In *Roth*, the Massachusetts Supreme Court held "that judges should not initiate any inquiry into partial verdicts premised on lesser included offenses within a single complaint or count of an indictment." 776 N.E.2d at 450. The court first concluded that the Massachusetts Rules of Criminal

Procedure do not permit partial verdicts and then moved to the question of whether double jeopardy nevertheless requires such verdicts. *Id.* at 445–46. The court began its double jeopardy analysis by acknowledging that partial verdict inquiries carry "significant potential for coercion" and that "deadlocked juries are particularly susceptible to coercion." *Id.* at 447. The court then elaborated on the coercion problem:

> [T]he import of the [partial verdict] inquiry is unmistakable: "Can't you at least decide a part of this case?" The inquiry, by its nature, plays on the deadlocked jurors' natural sense of frustration, disappointment, and failure. The jurors are confronted with the request, and asked to absorb its inherent complexity, at the worst possible time, when they are tired, anxious to be discharged, and perhaps angry at fellow jurors whom they blame for failing to reach agreement. While technically inquiring only as to what the jurors have already agreed on, the request for partial verdicts broken down by lesser included offenses implicitly suggests that the jurors should try just a little bit harder to come back with at least a partial decision to show for all of their efforts.

*Id.* at 448.

The second problem the *Roth* court identified is the propensity of jurors to compromise in an attempt to reach a final verdict. In particular, the court noted that "a judge's request that the jury divulge the substance of their 'final' vote may force the jury to report as 'final' some votes that were not intended to be 'final' unless they resolved the entire case." *Id.* at 448–49. For these reasons, the court concluded that double jeopardy does not require partial verdict inquiries.

We find the *Roth* court's reasoning—including its concerns about juror coercion and compromise—persuasive. First, in the case where a jury has not completed deliberations

---

**5.** The term "partial verdict" could have several meanings. *See Whiteaker v. State*, 808 P.2d 270, 273–74 (Alaska Ct.App.1991) (discussing three uses of the term "partial verdict"). In this case, we use the term to refer to "a final verdict on some, but not all of the greater degrees of the offense included within the [murder] charge." *Id.* at 274.

**6.** A few states have rules of criminal procedure that expressly require trial courts to poll deadlocked juries and accept partial verdicts. *See, e.g.,* N.M.Crim. P. 5–611(D) (2007); N.Y.Crim. Proc. Law § 310.70 (2007). Colorado, however, does not have such a rule.

at the time of the partial verdict instruction, the resulting verdict might well be the result of juror coercion—a particular concern where, as here, the jury is deadlocked. "For all the reasons that we would lack confidence in any verdict of guilty that was returned under such conditions, we should lack confidence in any verdict of not guilty." *Roth*, 776 N.E.2d at 448; *see also Lewis*, 676 P.2d at 686 ("Unanimity requires a free and untrammeled deliberative process that expresses the conscientious conviction of each individual juror.").

■■■■ Second, a jury's deliberations should not be given the legal force of a final verdict until the end result is expressed on a verdict form returned in open court as required by Colorado law. *See* § 16–10–108, C.R.S. (2007); Crim. P. 23(a)(8); *see also Hickey*, 303 N.W.2d at 21 ("[T]he weight of final adjudication should not be given to any jury action that is not returned in a final verdict."); *Booker*, 293 S.E.2d at 80 ("[T]he better reasoned rule is the majority rule which requires a *final verdict* . . . ."). Indeed, it is very possible that jurors could believe that a defendant is guilty of a greater charge, but focus on lesser offenses "in a spirit of compromise to reach a verdict." *Hall*, 324 N.E.2d at 52; *see also Hickey*, 303 N.W.2d at 21 ("[A]s a practical matter . . . jury votes on included offenses may be the result of a temporary compromise in an effort to reach unanimity."). Moreover, under the verdict form used in this case, "the jury was to return a single verdict," not separate not-guilty verdicts on each of the greater and lesser offenses. *Bell*, 322 N.W.2d at 95. In short, the jury's informal and non-final discussions and decisions concerning the first- and second-degree murder charges against

Richardson are not reliable. *See Roth*, 776 N.E.2d at 448 (discussing the unreliability of jury deliberations "until there is a final verdict on the entire charge"). Therefore, the trial court properly accepted the jury's final verdict and properly refused to poll the jurors with regard to interim votes on the first- and second-degree murder charges.[7]

**2.**

■■■■ We also reject Richardson's argument that the jurors' affidavits should be considered in addressing his double jeopardy claim. We recently addressed this issue in *Stewart v. Rice*, where we determined that CRE 606(b) "broadly prohibits using juror testimony to contest a verdict." 47 P.3d 316, 321 (Colo.2002). Richardson, however, argues that the affidavits are admissible under an exception to CRE 606(b). In *Stewart*, we held that juror affidavits are only admissible to show that (1) extraneous prejudicial information was improperly brought to the jurors' attention, (2) a juror was improperly affected by an outside influence, or (3) the verdict contains a clerical error. *Id.* at 323–24. None of these exceptions applies here because Richardson offers the affidavits as evidence of the jury's deliberations for the purpose of impeaching the final verdict that was returned in open court, and this use is prohibited. *Id.* at 323 (stating that jurors may not impeach a verdict by testifying about their deliberations). Therefore, the affidavits are not admissible under CRE 606(b).

Richardson attempts to avoid CRE 606(b) altogether by arguing alternatively that the rule is inapplicable because the jury never returned a verdict on the first-degree murder charge. In other words, Richardson ar-

---

7. We also note that the minority rule advocated by Richardson has developed almost exclusively in "hard transition" states. In those states, juries receive "acquittal first" instructions requiring them to return final verdicts on greater offenses before returning verdicts on lesser-included offenses. *See, e.g., Whiteaker*, 808 P.2d at 274; *People v. Kurtzman*, 46 Cal.3d 322, 250 Cal.Rptr. 244, 758 P.2d 572, 577 (1988); *Tate*, 773 A.2d at 320; *Pugliese*, 422 A.2d at 1320. As the *Tate* court acknowledged, this scheme "requires the jury to reach a partial verdict" on the greater offenses first. 773 A.2d at 321. Colorado, however, follows

the "soft transition" approach, meaning that the jury need not acquit the defendant of greater offenses before reaching a verdict on a lesser offense. *See, e.g., People v. Bachicha*, 940 P.2d 965, 967 (Colo.App.1996); *People v. McGregor*, 635 P.2d 912, 914 (Colo.App.1981); *cf. People v. Padilla*, 638 P.2d 15, 18 (Colo. 1981) (noting that the particular jury instruction in question was proper because, *inter alia*, it could not be "read to require a unanimous decision on the greater offense before consideration of the lesser"). We therefore find the cases relied upon by Richardson to be distinguishable on that basis.

gues that CRE 606(b) does not apply because he is not challenging the validity of a verdict, but rather is attempting to establish what the verdict was in the first place. *See* CRE 606(b) (stating that jurors may not testify "[u]pon an inquiry into the validity of a *verdict* " (emphasis added)).

 We have never considered whether CRE 606(b) applies when a defendant seeks to establish a verdict—in whole or in part—as to a charge on which the jury hung, and we need not do so today. Assuming the rule does apply, the jurors' affidavits are not admissible under any of its exceptions. Assuming the rule does not apply, the affidavits are still inadmissible because Colorado does not allow verdict by affidavit. Rather, under Colorado's criminal procedure rules, a verdict must be submitted on a signed verdict form that is returned in open court with an opportunity for each juror to be individually polled. *See* Crim. P. 31; *see also* § 16–10–108. Either way, the affidavits are not proper evidence for consideration in this case.

### III.

In sum, we hold that a mistrial was manifestly necessary because the jury was deadlocked as to the first-degree murder charge. Consequently, double jeopardy does not bar retrial of Richardson on the first-degree murder charge or its lesser-included offenses of second-degree murder, manslaughter, and criminally negligent homicide. We further hold that the trial court properly refused Richardson's requests to poll the jury as to the offenses of first- and second-degree murder and to consider the jurors' affidavits as evidence of a partial verdict. We therefore discharge the rule to show cause.

Justice MARTINEZ dissents.

Justice BENDER does not participate.

Justice MARTINEZ, dissenting.

Although I agree with the majority that this court may not consider the jurors' affidavits, which revealed that the jury acquitted the defendant of first- and second-degree murder, I disagree that the trial court had no authority or responsibility to conduct a partial verdict inquiry to determine if the jury acquitted Richardson of the greater offenses. The danger realized here is that, prior to the jury's discharge, there was no procedure allowing the jury to report an acquittal on the greater charge, and yet, after the jury's discharge, we cannot consider juror affidavits or testimony revealing the jury's acquittal. Consequently, defendants such as Richardson may be retried, and thereby put in jeopardy a second time, for offenses on which they were in fact acquitted. Thus, the effect of the majority's opinion is to prevent a future double jeopardy violation by assuring that a court cannot know about (or cannot legally recognize) the double jeopardy violation. Accordingly, I respectfully dissent.

Central to the issue presented by this case is a choice of procedure for dealing with a jury's deadlock over a charge that includes lesser degrees of offenses. Specifically at issue is whether, before declaring a mistrial, the trial court should have conducted a partial verdict inquiry by polling the jurors in order to assure that the jury was actually unable to reach a verdict as to each offense. The majority concludes that conducting such a partial verdict inquiry is inappropriately coercive on the jury's deliberations and does not reflect the jury's final verdict. *See* maj. op. at 764. Thus, the majority holds that the trial court properly refused Richardson's request to poll the jury to determine whether it had reached unanimity on the greater offenses. *Id.* at 764.

In contrast, I would hold that the far better procedure would require that the trial court afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked on the lesser-included offenses. Implementing such a procedure recognizes the underlying concern that a defendant can be subject to a double jeopardy violation without his knowledge or without the ability to challenge the violation. In the first instance, the jury may unanimously decide to acquit the defendant of the greater charge and yet have no procedure by which to report the acquittal. Consequently, the defendant is unaware that his retrial on that offense has placed him in

jeopardy a second time. In the latter instance, the defendant may have evidence such as juror affidavits stating that the jury acquitted him of the greater charge, and yet the affidavits are either inadmissible under Rule 606(b) or they cannot constitute a verdict. To protect against the realistic danger of these future double jeopardy violations, the better procedure would provide an opportunity for the jury to render a partial verdict and thereby shield the defendant from retrial on offenses for which he was in actuality acquitted. Therefore, where as here, defendant has requested that the jury be polled regarding its unanimity as to a greater offense, I would hold that the trial court should conduct a partial verdict inquiry to determine whether the jury was actually unable to reach a verdict as to each offense submitted to the jury.[1]

This conclusion is supported by the fact that a substantial number of states have implemented various procedures by which the jury can render an acquittal on a greater offense despite deadlocking on lesser-included offenses. At least six states have caselaw explicitly outlining procedures for rendering a partial verdict. *See Whiteaker v. State*, 808 P.2d 270, 278 (Alaska Ct.App.1991); *Stone v. Superior Court*, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 820 (1982); *State v. Tate*, 256 Conn. 262, 773 A.2d 308, 323–24 (2001); *State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319, 1321 (1980); *State v. Castrillo*, 90 N.M. 608, 566 P.2d 1146, 1149 (1977), *overruled on other grounds by State v. Wardlow*, 95 N.M. 585, 624 P.2d 527 (1981); *Oliver v. Justices of the N.Y. Supreme Court*, 36 N.Y.2d 53, 364 N.Y.S.2d 874, 324 N.E.2d 348, 351 (1974). Additionally, at least another eight states have caselaw that assumes the validity of

accepting a partial verdict, which would indicate that these states have some procedure by which a partial verdict can be accepted. *See Andrade v. Superior Court*, 183 Ariz. 113, 901 P.2d 461, 462 (App.1995) (holding that when the jury acquitted the defendant on the greater offense, but deadlocked on the lesser-included offenses, double jeopardy did not bar retrial of the lessers); *People v. Krogul*, 115 Ill.App.3d 734, 70 Ill.Dec. 807, 450 N.E.2d 20, 23 (1983) (same); *Commonwealth v. Ray*, 982 S.W.2d 671, 674 (Ky.Ct. App.1998) (same); *People v. Booker*, 208 Mich.App. 163, 527 N.W.2d 42, 48 (1994) (approving trial court's acceptance of "partial acquittals" on the greater charges of first- and second-degree murder, while allowing defendant to be retried on lesser-included offense of manslaughter); *State v. Halsey*, 232 Neb. 658, 441 N.W.2d 877, 880 (1989) (noting that trial court entered not-guilty verdict on greater charge of attempted first-degree murder, but declared mistrial as to lesser charge of attempted second-degree murder); *State v. Grabowski*, 644 A.2d 1282, 1286 (R.I.1994) (holding that when jury acquitted defendant on greater offense, but deadlocked on lesser-included offenses, double jeopardy did not bar retrial of the lessers); *State v. Seagroves*, 691 S.W.2d 537, 541 (Tenn.1985) (same); *State v. Russell*, 101 Wash.2d 349, 678 P.2d 332, 335 (1984) (same). Thus, a substantial number of states have implemented procedures to permit the jury to render a partial verdict on a greater offense.

Several of these states have incorporated this caselaw into their rules, statutes, and jury instructions. *See*, e.g., N.M.Crim. P. 5–611(D);[2] N.Y.Crim. Proc. Law § 310.70

---

1. I would note that the trial court may provide the jury with an opportunity to render a partial verdict through other means such as jury instructions and verdict forms. Indeed, such avenues may be the better procedure by which the jury could be informed of its ability to render a partial verdict. However, because we do not have the trial court's instructions here and the trial court did not provide the jury with a verdict form that allowed for a partial verdict, the only consideration at hand is whether the trial court should have conducted a partial verdict inquiry.

2. For example, New Mexico implemented the holding of *State v. Castrillo*, 90 N.M. 608, 566

P.2d 1146 (1977), through its Rule of Criminal Procedure 5–611, which provides:

D. Conviction of Lesser Offenses.... If the jury has been instructed on one or more lesser included offenses, and the jury cannot unanimously agree upon any of the offenses submitted, the court shall poll the jury by inquiring as to each degree of the offense upon which the jury has been instructed beginning with the highest degree and, in descending order, inquiring as to each lesser degree until the court has determined at what level of the offense the jury has disagreed. If upon a poll of the jury it is determined that the jury has unanimously

(2007). Underlying the majority's rationale is that Colorado should not allow partial verdict inquiries because there is no procedure supporting the practice. *See* maj. op. at 763 n. 6, 764. However, this circular reasoning that determines no procedure should be created because no procedure currently exists ignores the fact that the rules, jury instructions, and verdict forms in these states were written to implement decisions issued by the state courts that authorized and outlined the trial court's obligation to accept partial verdicts. Thus, the lack of a procedure authorizing partial verdicts in Colorado, where this issue has not been decided, should not preclude this court from finding that the trial court can conduct a partial verdict inquiry and should do so in certain instances.[3]

Moreover, contrary to the majority's rationale for its position, the trial court can conduct a partial verdict inquiry without invading jury deliberations, causing any coercive effect on jury decisions, or accepting a verdict that is not actually final. If an inquiry into the greater offenses does not occur until the jury has announced that it has carried its deliberations as far as possible, there is no effect on deliberations and the jury is reporting its final verdict. *See Tate*, 773 A.2d at 324 n. 15 ("Reporting a verdict, even a partial verdict, does not intrude impermissibly into the jury deliberations. It focuses on the results, if any, of its deliberations, and not on the nature or content of those deliberations."); *see also Pugliese*, 422 A.2d at 1321 (noting that the "ends of public justice" would not have been defeated "by simply asking the jury if they had reached a verdict on the [greater offense]"). To assure that there is no effect on deliberations, the following procedure can be implemented. After the jury indicates that it has carried its deliberations as far as possible and there is no reasonable likelihood of progress toward a unanimous verdict on a charged offense, the trial court calls the jury out to receive any verdicts reached. Then, beginning with the greatest offense, the trial court inquires whether the jury has reached unanimity. If the answer is negative, the court has an immediate basis for declaring a mistrial as to the charged offense and all lesser-included offenses. In contrast, if the jury announces that it unanimously voted for acquittal on the greatest offense, the court can receive that verdict and enter a judgment as to that offense. Finally, the court questions the jury as to each lesser-included offense, beginning with the greatest of the lesser-included offenses, until the court reaches an offense on which the jury was deadlocked.[4]

voted not guilty as to any degree of an offense, a verdict of not guilty shall be entered for that degree and for each greater degree of the offense.
N.M.Crim. P. 5–611(D).

3. Notably, although the record before us does not contain the jury instructions given by the trial judge, Colorado's standard jury instructions may be read as instructing that a partial verdict is appropriate. The jury instructions provide:

After considering all the evidence, *if you decide the prosecution has failed to prove* one or more element of *the crime charged or a lesser included offense, you should find the defendant not guilty of the offense which has not been proved, and you should so state in your verdict.*
*While you may find the defendant not guilty of [any or all of] the crime(s) charged, or of any or all lesser included offenses;* you may not find the defendant guilty of more than one of the following offenses: [*Here insert the offense charged and all lesser included offenses by name.*]
CJI–Crim. 38:06 (1993). Thus, a jury is instructed to state in its verdict whether it has found the defendant *not guilty* of the crime charged *or* a lesser-included offense. In spite of this instruc-

tion, the corresponding verdict form, which Richardson's jury received, only allows for two possibilities: (1) not guilty on *all* charges or (2) guilty of the crime charged or one of the lesser-included offenses. Thus, a jury is left without remedy to render any not-guilty verdict on the greater charges. However, this current inconsistency could be remedied by allowing the trial court to conduct a partial verdict inquiry and thereby permit the jury to render any not-guilty verdict as instructed.

4. Indeed, the acceptance of the jury's acquittal of a greater offense at the conclusion of the jury's deliberations does not exert any greater coercion on the jury's deliberations than the court's acceptance of a partial verdict where offenses are charged separately. For example, there is no contention in Richardson's case that the jury's verdict was coerced when the trial court accepted a not-guilty verdict on the separately charged vehicular manslaughter (DUI) offense, but declared a mistrial as to the first-degree murder and vehicular homicide (reckless) charges. Thus, whether the trial court is accepting a verdict on separate charges or on separate offenses included within a charge, the jury's deliberations

The majority mistakenly implies that a partial verdict inquiry cannot be conducted in a "soft transition" jurisdiction such as Colorado, where the jury need not unanimously acquit the defendant of the greater offense before considering the lesser-included offenses. Although there may be some correlation between "hard transition" states and states that allow partial verdicts, the "soft transition" approach does not make a partial verdict inquiry any more problematic or inappropriate. Rather, the "soft transition" approach merely allows for the possible scenario in which the trial court conducts a partial verdict inquiry and the jury reports that it did not reach unanimity on the greater offense before it moved on to consider the lesser-included offenses. In that instance, the jury has not reached unanimity on the greater offense and there is manifest necessity for the declaration of a mistrial as to the charged count and all lesser-included offenses.

In sum, I would hold that: (1) the trial court is authorized to poll the jury after it has reported deadlock to determine if the jury did in fact acquit the defendant of the greater offense or offenses and (2) where the trial court failed to inquire whether the jurors reached a unanimous partial verdict as to the greater offenses, despite a request by the defendant to do so, there is no manifest necessity sufficient to declare a mistrial as to those greater offenses.

Here, defense counsel made several requests that the trial court inquire of the jury whether they had reached a verdict on any greater offenses. Additionally, there was some ambiguity in the notes received from the jury as to whether the jury was deadlocked on the greater and the lesser-included offenses or whether the jury had reached unanimity on a greater offense and only remained deadlocked on the lesser-included offenses. Thus, the trial court should have inquired into whether the jury reached unanimity on the greater offenses.

remain unaffected because the trial court is merely receiving the jury's final verdict after its

Because the trial court failed to poll the jury as to the greater offenses, I would look to other states that have considered the appropriate remedy where a trial court should have conducted a partial verdict inquiry but failed to do so. These courts have held that the appellate court must assess whether the trial court record reveals the specific charges on which the jury was deadlocked. *See Whiteaker,* 808 P.2d at 278–79; *Stone,* 183 Cal. Rptr. 647, 646 P.2d at 822; *Tate,* 773 A.2d at 325–26; *Castrillo,* 566 P.2d at 1151–52. If the record shows that the jury was deadlocked on particular charges, the defendant may be retried on those offenses, but not on any greater offense. *See Stone,* 183 Cal. Rptr. 647, 646 P.2d at 822. However, where the record is not clear as to whether the jury was deadlocked over acquittal, a greater offense, or a lesser-included offense at the time of discharge, the court must presume that it was the least serious lesser-included offense. *See Tate,* 773 A.2d at 325–26; *Castrillo,* 566 P.2d at 1151–52. Thus, the retrial of the greater offenses would be barred by double jeopardy.

Here, the record does not reveal the specific charges on which the jury was deadlocked. Based on Richardson's specific objection to retrial on first- and second-degree murder only, I would hold that double jeopardy bars retrial on those two offenses. *See People v. Ortiz,* 196 Colo. 438, 439, 586 P.2d 227, 228 (1978) (holding that if defendant moved for, or consented to, mistrial, retrial of defendant was not barred on double jeopardy grounds).

Accordingly, I would make the rule to show cause absolute and order that Richardson cannot face retrial on the first- and second-degree murder charges. Therefore, I dissent.

deliberations are complete.